UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**RALPH NADER,**                    )
                                    )
        Plaintiff,          )
                                    )
    v.                            )     Civil Action No. 10-989 (RCL)
                                    )
**FEDERAL ELECTION COMMISSION,**    )
                                    )
        Defendant.          )
_____ )

## MEMORANDUM & ORDER

Before the Court is plaintiff's Motion [25] to Alter or Amend the Judgment. Having carefully considered the Motion, Opposition, the absence of a reply, the entire record in this case, and the applicable law, the Court will deny plaintiff's Motion.

**I.     BACKGROUND**

The plaintiff in this case is former Presidential candidate Ralph Nader. He filed an administrative complaint with the Federal Election Commission in May 2008, where he alleged that many individuals, law firms, and political organizations affiliated with the Democratic Party (collectively, "respondents") conspired to deny him and his running mate ballot access in numerous states as candidates for President and Vice President in the 2004 general election. *See Nader v. Fed. Election Comm'n*, No. 10-989, 2011 WL 5386423, *1 (D.D.C. Nov. 9, 2011). Nader's administrative complaint brought four counts, and claimed that the respondents violated various provisions of the Federal Election Campaign Act of 1971 regarding contribution limits and registration and reporting requirements. *Id.*

The FEC reviewed Nader's administrative complaint and dismissed it by a unanimous vote. It found "no reason to believe" that various respondents had violated FECA, dismissed the

administrative complaint as to certain Section 527 groups, and closed the matter as to every other person and entity named in the administrative complaint. *Id.* at *2. Pursuant to 2 U.S.C. § 437g(a)(8), Nader filed a complaint in this Court for wrongful dismissal, arguing that the FEC's decision was contrary to law, arbitrary and capricious, and an abuse of discretion. *Id.* Nader and the FEC filed cross-motions for summary judgment, and the Court granted the FEC's motion in November 2011. *Id.* at *13. Nader then filed the instant Motion, pursuant to Federal Rule of Civil Procedure 59(e), asking the Court to alter or amend the Court's Memorandum Opinion based on various errors he believes that Opinion contains. Pl.'s Mot. to Alter or Amend Judgment [25] 1, Dec. 7, 2011.

## II.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a party, within 28 days following entry of a judgment, to file a motion to alter or amend that judgment. Motions filed under Rule 59(e) are generally disfavored, and are granted only when the moving party establishes that extraordinary circumstances justify relief. *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). A court need not grant such a motion unless it finds that there is an intervening change of controlling law, new evidence, or the need to correct clear error or prevent manifest injustice. *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998) (citations and quotation marks omitted). Such motions are not an opportunity to reargue facts and theories upon which a court has already ruled. *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995).

## III.   ANALYSIS

Nader's Motion will be denied because it fails to establish that extraordinary circumstances warrant alteration or amendment of the Court's November 2011 Memorandum

Opinion. In addition to misquoting and mischaracterizing that Opinion, Nader's Motion rehashes arguments from his Motion for Summary Judgment, while substituting the Court instead of the FEC as the villain.

Nader argues in his Motion that the Court clearly erred by (1) finding that the FEC's failure to notify numerous respondents of Nader's administrative complaint was harmless error; (2) imposing an "improper evidentiary burden" on him by calling for "actual proof" of FECA violations rather than the less stringent "reason to believe" standard of 2 U.S.C. § 437g(a)(2); and (3) "misconstru[ing] and "disregard[ing]" evidence in the administrative record. *See* Pl.'s Mem. [25] 2. The Court will discuss each of these arguments in turn.

### A. Harmless Error

Nader's Motion fails to demonstrate that the Court clearly erred in ruling that the FEC's failure to comply with the notification requirement of § 437g(a)(1) of FECA constituted harmless error. In its Opinion, the Court agreed with Nader that the FEC violated the Act by failing to notify all of the respondents, as § 437g(a)(1) unambiguously requires. *Nader*, 2011 WL 5386423, at *14. However, based upon a well-reasoned decision from this District, the Court found the "harmless error" doctrine applicable to the FEC's procedural failing. *Id.* at *13 (citing *Fed. Election Comm'n v. Club for Growth, Inc.*, 432 F. Supp. 2d 87, 90 (D.D.C. 2006)). Since Nader failed to show that *he* was harmed by the FEC's failure to notify the individuals and entities whom he alleged had violated the law, the Court found the FEC's error harmless and declined to reverse the agency's decision. *Id.*

In the instant Motion, Nader does not appear to challenge the Court's reading of *Club for Growth* as finding the harmless error doctrine applicable within the context of violations of the very notification procedure at issue in this case. *See* Pl.'s Mem. [25] 4. Instead, Nader believes

that this case should have come out differently because *Club for Growth* involved a "minor" error, whereas here the FEC's failure to notify various respondents constituted, Nader says, a "complete failure to commence the Act's mandatory enforcement process." *Id.* at 5.

However, what matters is not how one labels a procedural error, but whether there's actual harm, and on this point Nader's Motion is lacking.  Nader's general point—namely, that failure to serve certain respondents with § 437g(a)(1) notice "terminated this enforcement action at its inception," Pl.'s Mem. [25] 3—is literally false, as the enforcement action was not terminated as to any respondent, notified or not, until the Commission's vote to dismiss.  Nader's other theory concerning harm likewise succumbs under scrutiny.  He suggests that failure to provide § 437g(a)(1) notice to others harmed him because the FEC, if it had notified all respondents, could have reviewed these additional responses to the administrative complaint and so would have made a decision on a more "developed" administrative record. *Id.* at 4.  However, as the Court stated in its Opinion, § 437g(a)(1) notification doesn't automatically lead to the production of responses from those the FEC notified—they are not *required* to respond.  Therefore Nader's contention that the FEC would have received responses, and would have therefore made a better decision on a more complete administrative record, is pure speculation, and insufficient to demonstrate that he was harmed.  Furthermore, Nader doesn't even attempt to demonstrate or argue that such responses, if received by the FEC, would have helped *his* case.

In sum, Nader fails to provide a coherent theory for why he was harmed by the FEC's notification failure, let alone to support such a theory.  Having failed to persuade the Court that it clearly erred, his Motion will be denied.

### B.  "Improper" Evidentiary Burden

Nader also faults the Court for imposing what he calls an "improper evidentiary burden"

on him by requiring "actual proof" of FECA violations rather than the less stringent "reason to believe" standard of 2 U.S.C. § 437g(a)(2). *See* Pl.'s Mem. [25] 2. As an initial matter, the Court notes that it is not surprising that Nader reaches this conclusion, since it is based on repeated misquotation and misconstruction of passages from the Court's Opinion. However, contrary to Nader's assertions, the Court neither expressly nor implicitly applied the wrong standard in its review of the FEC's decision.

The Court's opinion made clear the law governing its review of the FEC's dismissal of Nader's administrative complaint. In the section of the Memorandum Opinion titled, conveniently, "Standard of Review," the Court noted that § 437g(a)(2) of FECA requires the FEC to begin an investigation of a complaint if at least four commissioners find "reason to believe" a violation of the Act has occurred. *Nader*, 2011 WL 5386423, at *3. The Court noted that it was bound to defer to the FEC's decision unless it was contrary to law, arbitrary or capricious, or an abuse of discretion. *Id.* (citing *Hagelin v. FEC*, 411 F.3d 237, 239 (D.C. Cir. 2005)). Throughout the Opinion the Court references these rules in reviewing the FEC's actions. *See, e.g., id.* at *6 ("Nader has not provided the FEC with reason to believe that [the law firms] made expenditures in coordination with the Kerry–Edwards Campaign"); at *8 ("the Court's evaluation of the administrative record and the FEC's reasoning leads it to conclude that the agency's determination that, as to Count 1, there was 'no reason to believe' that the DNC, the Kerry Committee, their treasurers, or John Kerry personally violated FECA is not contrary to law"); at *10 ("[T]he Court finds that the FEC's decision to find 'no reason to believe' that ACT violated FECA . . . is not contrary to law'"). The Court assumes Nader is aware of these passages.

But perhaps what Nader is saying is that the Court applied the wrong standard *sub*

*silentio*. However, when Nader gets to specific parts of the Court's Opinion that trouble him, none of these show the wrong standard was applied. For example, Nader says that the Court "affirmed dismissal of the claims in Count I primarily on the ground that the FEC 'reasonably determined' that the 'supporting facts were insufficient' to *establish* 'coordination' between these Respondents and the DNC and Kerry–Edwards 2004." Pl.'s Mem. [25] 7 (emphasis added). However, Nader's insertion of the word "establish" into this quotation results in a misquotation. The Court didn't say that the FEC reasonably determined that Nader's supporting facts failed to "establish" coordination; it stated that the FEC noted that "this allegation was insufficient to *suggest* coordination . . . ." *Nader*, 2011 WL 5386423, at \*6 (emphasis added). The Court's use of the word "suggest"—rather than "establish"—is consistent with the statutory requirement that the FEC determine whether there is "reason to believe" a violation of the Act occurred.

Nader again misquotes the Court when he states that "the Court found that the Administrative Complaint fails to 'establish coordination' between" Reed Smith and the DNC or Kerry–Edwards 2004. Pl.'s Mem. [25] 7. Nader's point is that the Court's use of the word "establish" indicates that it held him to a burden of actual proof, rather than the less stringent "reason to believe" standard of § 437g(a)(2). However, Nader supports this point by lifting the words "establish[es] coordination" from two sentences where the Court is not applying the standard of review to the FEC's decision, but describing *Nader's* own contentions about the strength of his allegations. Specifically, the Court stated that "[a]s to Reed Smith, *Nader's complaint suggests* that ties between John Kerry and the firm, as well as the fact that 18 of its attorneys worked on a ballot-access challenge to Nader–Camejo in Pennsylvania, *establishes coordination*, . . . , but it was not unreasonable for the FEC to conclude otherwise." *Nader*, 2011

WL 5386423, at *7 (emphasis added). It should be obvious to Nader that the Court, in this sentence, was summarizing Nader's own characterization[1] of the strength of his evidence, not applying an "actual proof" standard to the allegations in his administrative complaint.

The second sentence of the Court's Opinion in which the words "establishes coordination" appear also describe Nader's characterization of his own allegations. On page seven of his administrative complaint, Nader says it includes "two pieces of evidence that *prove beyond any doubt* that the DNC and the Kerry–Edwards Campaign coordinated their efforts . . . ." AR at 7 (emphasis added). After review of this evidence and Nader's discussion of it, the Court stated that "Nader doesn't explain how this e-mail establishes coordination or even between whom." *Nader*, 2011 WL 5386423, at *7. Again, the Court was only commenting on the fact that Nader did not explain how his evidence delivered the level of proof *he claimed* it delivered. But regardless of how Nader characterized his evidence, the Court concluded that the FEC's determination that this evidence was inadequate was reasonable and entitled to deference.

Finally, Nader isolates language from a section of the Court's Opinion that had nothing to do with the Court's review of the FEC's "reason to believe" determination in order to support his contention that the Court applied the wrong evidentiary burden when reviewing that determination. Nader states that: "The Court contends that the law firm Respondents would not 'necessarily' produce their billing records if the FEC had served them as it was required by law to do, and 'even if they did . . . there is no reason to think that these responses would contain information favorable to [the Candidate]." Pl.'s Mem. [25] 10 (quoting *Nader*, 2011 WL

---

[1] Nader's briefs in this litigation, and his administrative complaint, routinely state that certain evidence not only suggests, but conclusively demonstrates, a material fact. *See, e.g.*, Pl.'s Opp'n Def.'s Mot. Summ. J. [19] 4 (stating that the allegations in his administrative complaint were "more than sufficient to *demonstrate* . . . that both Kerry–Edwards 2004 not only 'coordinated,' but also directed and actively participated in Respondents' nationwide effort to challenge Nader–Camejo 2004 . . . ."); AR at 7 (stating that "two pieces of evidence . . . *prove beyond any doubt* that the DNC and the Kerry–Edwards Campaign coordinated their efforts and engaged in joint action with Respondents."); AR at 8 (stating that certain evidence provides conclusive proof that law firms conspired with the Democratic Party and Kerry–Edwards Campaign to keep Nader–Camejo off the ballot).

7

5386423, at *13). Nader claims that by (allegedly) requiring him to "necessarily" establish in his administrative complaint that an investigation would show violations of the Act, the Court clearly erred. *Id.* However, the section of the Court's opinion Nader lifts this language from concerned application of the harmless error doctrine to the FEC's failure to serve the administrative complaint on every respondent. The Court was no longer reviewing the FEC's decision to dismiss the administrative complaint, and so the language Nader quotes is irrelevant to his argument.

In sum, Nader's claim in his Motion that the Court applied the wrong standard of review is entirely frivolous.

### C. "Misconstru[ing]" and "Disregard[ing]" Evidence

Finally, alongside his complaint regarding the Court's application of the harmless error doctrine and his assertion that the Court applied the wrong standard, Nader claims that the Court made numerous factual mistakes. *See* Pl.'s Mem. [25] 11. However, none of Nader's examples show that the Court clearly erred.

Nader's first assertion of a factual error arises in his discussion of the Court's review of Count I of his administrative complaint, which asserted that various individuals and entities ("The DNC, 18 state or local Democratic Parties, the Kerry–Edwards Campaign, the Ballot Project, at least 95 lawyers from 53 law firms, and an unknown number of DNC and state Democratic Party employees . . . .") made illegal campaign contributions to the Kerry–Edwards Campaign by "initiat[ing] or support[ing] litigation to force Nader–Camejo from the ballot in 18 states, for the specific purpose of benefitting the Kerry–Edwards Campaign . . . ." AR at 91. The FEC found Nader's allegations in Count I insufficient in part because it determined (reasonably, in the Court's opinion) that these allegations failed to suggest that the Kerry

Committee played a role in the ballot access litigation of these various respondents, as opposed to being merely an indirect beneficiary of their work. AR at 1730.16.

Nader claims that the FEC "completely ignor[ed] the fact that the DNC retained Reed Smith"—one of the respondent law firms—"during the 2004 presidential election." Pl.'s Mem. [25] 8. This is false. The FEC clearly considered this allegation. *See* AR at 1730.11 ("[T]he complaint also alleges that the DNC's disclosure reports show that it paid Reed Smith $136,142 [for political and legal consulting] in October and November 2004."). So did the Court. *Nader*, 2011 WL 5386423, at *6 (citing AR at 1730.10–11).

Nader then accuses the Court of "misconstru[ing]" the record by stating that John Kerry "may have retained [Reed Smith's] services in the past," when "in fact" the record shows that "John Kerry is an important client of Reed Smith." Pl.'s Mem. [25] 8 (quoting *Nader*, 2011 WL 5386423, at *7 and AR at 84). Nader's position is that the law firm's contemporaneous representation of John Kerry is enough to provide "reason to believe" that Kerry and Reed Smith coordinated with each other. *Id.* As an initial matter, the Court's use of the past tense in referring to Reed Smith's representation of Kerry does not conflict with Nader's administrative complaint, which describes their ties the same way. *See* AR at 49 ("Reed Smith, a law firm that *has represented* John Kerry and Teresa Heinz Kerry in numerous personal and professional matters . . . ."). However, the Court did not ignore the ties between Reed Smith and Kerry. Rather, it found that Nader's allegations concerning these ties, on the one hand, and the participation of a small group of Reed Smith attorneys in ballot access litigation against Nader–Camejo in Pennsylvania, on the other, failed to provide sufficient evidence of coordination between Reed Smith and Kerry or his political organizations *regarding the latter litigation* for the Court to overturn the FEC's finding on that issue. The issue is not whether these parties

9

coordinated on some activities, but whether they coordinated concerning the very activity that Nader alleges led to violations of the Act—*i.e.*, the Pennsylvania ballot-access litigation. On this point, Nader has nothing but speculation. If the Court accepted Nader's argument, not one of Reed Smith's 1,600-plus attorneys could have ever performed work, on a volunteer basis, on ballot challenges to Nader–Camejo, without the FEC being *required* to investigate them and the firm, which is absurd. As the Court ruled, the FEC reasonably declined to launch an investigation absent more specific allegations from Nader suggesting the involvement of the Kerry Committee in directing those specific ballot access challenges.

Nader next argues that the Court "disregard[ed] or misconstrue[d]" evidence in the record relating to a Pennsylvania grand jury investigation, which dealt generally with alleged misconduct by Pennsylvania state employees and the use of taxpayer funds for campaign purposes. Pl.'s Mem. [25] 8. In particular, Nader claims that the Court deferred to the FEC's conclusions on the insufficiency of this evidence while allegedly disregarding the grand jury's finding that the Pennsylvania ballot challenge was designed to benefit John Kerry's campaign. *Id.* (discussing *Nader*, 2011 WL 5386423, at *8). Nader also claims that the Court disregarded evidence indicating that a Reed Smith attorney was "coordinating" the Pennsylvania ballot-access challenge. *Id.* (citing AR at 1748–49). However, contrary to Nader's assertions, the Court did not "disregard" or "misconstrue" any of this. As the Court held early on in the Memorandum Opinion, the fact that legal work is intended to benefit a candidate does not suggest illegality absent coordination between the candidate and the parties performing the free work, *Nader*, 2011 WL 5386423, at *5, and so the Court did not feel the need to repeat the obvious—that the ballot-access challenge to Nader–Camejo in Pennsylvania was meant to help John Kerry. As to the evidence concerning the involvement of a Reed Smith attorney on the

Pennsylvania ballot challenge, *see* AR at 1748–49, the Court did not point to this evidence in its Opinion because it duplicated evidence that the Court had already determined failed to suggest coordination between the Reed Smith attorneys involved in the challenge and John Kerry or the DNC; this evidence was not "disregarded."

Nader also challenges the Court's deference to the FEC's findings as to Count II of his administrative complaint, which alleges, among other things, that the Service Employees International Union ("SEIU") and a Section 527 group called America Coming Together ("ACT") made illegal, unreported contributions to the DNC. AR at 93–94. The FEC dismissed the administrative complaint as to the allegations in Count II in part because the complaint failed to allege facts suggesting that "SEIU and ACT's activities in Oregon were coordinated with the Kerry Committee, the DNC, or any other entity." AR at 1730.19. In the instant Motion, Nader continues to press his argument that the fact that SEIU's Secretary–Treasurer, Anna Burger, was also a member-at-large of the DNC (the lowest level of DNC membership) suggests the two entities coordinated with each other specifically on an Oregon ballot challenge to Nader–Camejo. Pl.'s Mem. [25] 11. But, as the Court found when it covered this ground the first time, the FEC reasonably disagreed with Nader. Furthermore, Nader's claim in his Motion that this connection between Ms. Burger and the DNC shows that she "very well might have acted as the liaison between her two organizations," *id.*, only further highlights the speculative nature of his assertion that the SEIU and the DNC coordinated their efforts on the Oregon ballot challenges. Nader's identification of mere disagreements he has with the Court's Opinion is insufficient to warrant relief under Federal Rule of Civil Procedure 59(e). *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Finally, regarding the Court's review of the FEC's findings as to Count III of his

11

administrative complaint, Nader simply rehashes his arguments from his briefs at the summary-judgment stage, without engaging with the Court's analysis or otherwise casting doubt on the Court's decision to defer to the FEC's reasonable exercise of its prosecutorial discretion as to the Section 527 groups Nader claimed violated FECA by failing to register as political committees. *See, e.g.*, Pl.'s Mot. Summ. J. [16-1] 2–3, 19–20; Pl.'s Opp'n Def.'s Mot. Summ. J. [19] 9–11.

In sum, while Nader has identified numerous areas of disagreement between him and the Court, he has failed to show that the Court clearly erred or that any extraordinary circumstances justify relief from the Court's Opinion, and so his Rule 59(e) Motion will be denied.

## IV.   CONCLUSION

Accordingly, it is hereby

ORDERED that plaintiff's Motion [25] to Alter or Amend the Judgment is DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on April 12, 2012.